Vincent Subia, J.D.
7918-N El Cajon Blvd., # 308
La Mesa, CA 91941
Phone: 619.567.6965
Facsimile: 501.640.6812
On behalf of Plaintiff
DW Media, LLC

FILED

08 APR 17 PM 3: 57

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: _____

'08 CV 0711 IEG RBB

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DW Media, LLC., a Washington Limited Liability Company,<br><br>        Plaintiff,<br><br>-v-<br><br>Marc Keller, an individual, Lisa Keller, an individual, TELERX Marketing, Inc., and Does 1-20, inclusive,<br><br>        Defendants. | ) Case No.:<br>)<br>) COMPLAINT FOR WILLFUL COPYRIGHT<br>) INFRINGEMENT; STATUTORY UNFAIR<br>) COMPETITION; COMMON LAW UNFAIR<br>) COMPETITION;  INTENTIONAL<br>) INTERFERENCE WITH PROSPECTIVE<br>) ECONOMIC ADVANTAGE; NEGLIGENT<br>) INTERFERENCE WITH PROSPECTIVE<br>) ECONOMIC ADVANTAGE; BREACH OF<br>) CONTRACT; ACCOUNTING; PERMANENT<br>) INJUNCTION; and DEMAND FOR JURY<br>) TRIAL<br>)<br>) |

Plaintiff DW Media, LLC, hereinafter referred to as "DWM", alleges as follows:

### JURISDICTION AND VENUE

1.   This is a civil action for copyright infringement arising

under the Copyright Act of 1976, 17 U.S.C. Sec. 501 et

seq.,  and this Court has exclusive jurisdiction under at

least 28 U.S.C. §1338.

2.   The court has jurisdiction over these claims pursuant to 28 U.S.C. §§ 1331 and 1400.

3.   Venue is proper pursuant to 28 U.S.C. § 1391, and pursuant to prior agreement by the Parties.

**THE PARTIES**

Plaintiff

4.   Plaintiff DWM is a Limited Liability Company, organized under the laws of the State of California.

5.   DWM is a media Publishing Company, with its principal place of business at 7918-N El Cajon Boulevard, #308, La Mesa, California 91941.

6.   DWM is in the business of producing adult video products.

7.   DWM is well known in the relevant industry as "Dick Wadd", "Dick Wadd Media", and produces and distributes adult video products under the brand name "Dick Wadd."

8.   DWM has been producing high quality adult video products for many years, and through this continuous business activity, has developed a very good reputation in the industry, and is widely known as the exclusive source of Dick Wadd adult video products.

Defendants

9.   DWM is informed and believes, and based thereon alleges, that Defendant Marc Keller (hereinafter referred to as

"Keller") is an individual having a principal place of residence of 3763 Swetland Drive, Doylestown, Pennsylvania 18901.

10. DWM is informed and believes, and based thereon alleges, that Defendant Lisa Keller is the spouse of Defendant Marc Keller, with her principal place of residence of 3763 Swetland Drive, Doylestown, Pennsylvania 18901.

11. DWM is informed and believes, and based thereon alleges, that Telerx Marketing, Inc., is a Pennsylvania Corporation, having its principal place of business at 723 Dresher Rd., Horsham, PA  19044.

12. All defendants are hereinafter collectively referred to as "DEFENDANTS," and any acts alleged to have been committed by DEFENDANTS may be considered to have been committed by one or more, or all, of the individual defendants in this action.

13. DWM is informed and believes, and based thereon alleges, that each DEFENDANT is, and were at all times herein mentioned, the agent and/or employee of each other defendant, and in doing the things hereinafter alleged, was acting within the course and scope of such agency and/or employment.

14. DWM is further informed and believes, and thereon alleges, that each of the DEFENDANTS herein named gave consent to,

ratified, and authorized the acts alleged herein to each of
the remaining DEFENDANTS.


**STATEMENT OF FACTS COMMON TO ALL COUNTS**

Creation of the Copyrighted Works

15.  Over the past eleven (11) years, DWM has created dozens of
     adult video products.

16.  Each of these video products was videographed by Mr. Dan
     Guida, Jr. as a work for hire for DWM.

17.  DWM's various works contain a substantial amount of
     material created by DWM's own skill, labor, and judgment,
     and therefore is copyrightable subject matter under the
     laws of the United States, and as provided under
     international laws.

18.  The video products produced by DWM have become quite
     popular in the niche market to which it enjoys, and it is
     typical that new DWM video product releases are well
     received in the market, with a large majority of product
     being pre-purchased by enthusiastic customers.

19.  At all times since the initial publication and distribution
     of the DWM media products to the general public, the
     various DWM titles have acquired widespread recognition,
     notoriety, and identification in the minds of the consuming
     public.

20.  DWM has developed over thirty five (35) original video productions, and copyright registrations have been obtained for each video.  A table is presented in Exhibit 1 and shows the title of the work and the relevant copyright registration information including Registration Number and Date of Registration.

21.  DWM has complied in all respects with the Copyright Act of October 19, 1976, Title I Section 101, 90 Stat. 2541; 17 U.S.C. Sections 401-412, and all other laws governing copyright and secured the exclusive rights and privileges to the copyright of the various DWM works.

22.  Exhibit 2 contains a copy of each of the Copyright Registration Certificates for each of the works listed in the Table of Exhibit 1.

23.  DWM has no distributors, and sells its video products exclusively through its website located at www.dickwadd.com and directly through a small network of authorized retailers.  As a result of this marketing approach, DWM guarantees the highest quality product with professional customer service.

Keller's Prior Infringement Activities

24.  Keller has obtained video products from DWM previously, which he had duplicated and sold for profit.  More

specifically, Keller obtained several DWM media works in 2000, 2001, and 2002.

25.   For instance, in December of 2000, one shipment of DWM video products entitled "Some Pigs Two-Volume Set" was ordered and received by Keller at his Post Office Box of P.O. Box 695, Doylestown, PA 18901.  Receipt for this shipment is attached in Exhibit 3.

26.   Also in December of 2000, another shipment of DWM video products entitled "Bareback III" was ordered and received by Keller at Telerx, 723 Dresher Road, Horsham, PA 19044. Receipt for this shipment is attached in Exhibit 4.

27.   Later that same December of 2000, another shipment of DWM video products entitled "Some Pigs Two-Volume Set" was ordered and received by Keller at Telerx, 723 Dresher Road, Horsham, PA 19044.  Receipt for this shipment is attached as Exhibit 5.

28.   The end of that same December, another shipment of DWM video products entitled "Bareback II (Crime Pays)" was ordered and received by Keller at Telerx, 723 Dresher Road, Horsham, PA 19044.  Receipt for this shipment is attached as Exhibit 6.

29.   In January of 2001, yet another shipment of DWM video products entitled "Gluteus Maxxximus" on VHS, "NYPD" on VHS, and "LAPD" on VHS was ordered and received by Keller

at Telerx, 723 Dresher Road, Horsham, PA 19044.  Receipt

for this shipment is attached as Exhibit 7.

30. DWM, on information and belief, and based thereon alleges,

that Keller had ordered additional video titles from DWM or

one of its authorized retailers.

31. DWM, on information and belief, and based thereon alleges,

that Keller had ordered additional video titles from one or

more of DWM's authorized retailers, or from DWM under false

identities.

32. On or about 2002, DWM became aware that Keller had been

duplicating DWM video products in blatant violation of DWM

copyrights.

33. DWM made demands that Keller cease all copyright

infringement activities and provide DWM with an accounting

for sales and profits from his infringement activities.

34. On or about January of 2003, Keller entered into a

Settlement Agreement with DWM regarding certain claims of

willful acts of copyright infringement and paid DWM $12,575

for his infringing activities and agreed not to engage in

similar future infringing conduct.  A copy of the

Settlement Agreement is attached as Exhibit 8.

35. In the Settlement Agreement on page 2, paragraph 5, Keller

agreed to DWM's seeking injunctive relief for any breach of

the Settlement Agreement.

36.  Keller further agreed on page 3, paragraph 8 of the
     Settlement Agreement that Venue for any further disputes
     between Keller and DWM was San Diego County, California.

37.  The Settlement Agreement granted no past or future rights
     whatsoever to Keller with regard to DWM video products or
     rights therein.

Keller's Renewed Infringement Activities

38.  On or about June of 2006, a shipment of DWM video products
     entitled "Ambush on the Rocks" on DVD, "Cocks on the Rocks"
     on DVD, "Niggas' Revenge" on DVD, and "Stump" on DVD was
     ordered and received by Keller at his home of 3763 Swetland
     Drive, Doylestown, PA 18901.  Receipt for this shipment is
     attached in Exhibit 9.

39.  Later that same June of 2006, another shipment of DWM video
     products entitled "Pigs at the Zone" on DVD, "Some Pigs" on
     DVD, "Palm Springs Wet Dream" on DVD, and "Gluteus
     Maxxximus" on DVD was ordered by Keller to be delivered to
     his home at 3763 Swetland Drive, Doylestown, PA 18901.  The
     purchase order for this shipment is attached in Exhibit 10.

40.  In August of 2006, another shipment of DWM video products
     was ordered by Keller at his Post Office Box address of
     P.O. Box 695, Doylestown, PA 18901, and listed his home
     address of 3763 Swetland Drive, Doylestown, PA 18901.  The

original purchase order for these items is attached in Exhibit 11.

41. Later that same August of 2006, another shipment of DWM video products entitled "Bay of Pigs" on DVD, and "Pigs at the Zone" on DVD was ordered by Keller to be delivered to his home at 3763 Swetland Drive, Doylestown, PA 18901. The purchase order for this shipment is attached in Exhibit 12.

42. DWM, on information and belief, and based thereon alleges, that Keller had ordered additional video titles from one or more of DWM's authorized retailers, or from DWM under false identities.

43. DWM has recently become aware that Keller had begun once again selling counterfeit video products in violation of DWM's copyrights.

44. Keller had previously been selling unauthorized copies of DWM video products on an online auction website, commonly referred to as "NaughtyBids" located at www.naughtybids.com.

45. Upon investigation by DWM, it was discovered that Keller was again selling unauthorized copies of DWM video products on auctions through NaughtBids.

46. For instance, in March and April of 2006, Keller held three auctions for DWM's media product entitled "Pigs at the Troff." Copies of these three auction pages from

NaughtyBids are attached as Exhibit 13 (with certain graphic images redacted).

47.  In March and April of 2006, Keller held another two auctions for DWM's media product entitled "Stump." Copies of these two auction pages from NaughtyBids are attached as Exhibit 14 (with certain graphic images redacted).

48.  Also in March and April of 2006, Keller held three auctions for DWM's media product entitled "Wet, Raw and Deep." Copies of these three auction pages from NaughtyBids are attached as Exhibit 15 (with certain graphic images redacted).

49.  Also in March and April of 2006, Keller held three auctions for DWM's media product entitled "LAPD." Copies of these three auction pages from NaughtyBids are attached as Exhibit 16 (with certain graphic images redacted).

50.  Also in March and April of 2006, Keller held three auctions for DWM's media product entitled "NYPD." Copies of these three auction pages from NaughtyBids are attached as Exhibit 17 (with certain graphic images redacted).

51.  Also in March and April of 2006, Keller held three auctions for DWM's media product entitled "Wet Power Fucking." The title of the original DWM video is "Power Pissing". Copies of these three auction pages from NaughtyBids are attached as Exhibit 18 (with certain graphic images redacted).

52. Another auction was held by Keller on August 7, 2006, in which Keller auctioned off DWM's media product entitled "Ambush on the Rocks" for $55. This sale price represents a significant reduction in the price which the authentic video products are available from DWM. A copy of the NaughtyBids auction is attached as Exhibit 19.

53. Yet another auction was held by Keller on August 14, 2006, in which Keller auctioned off DWM's media product entitled "Stump" for $45. This sale price also represents a significant reduction in the price which the original video products are available from DWM. A copy of the Naughtybids auction is attached as Exhibit 20.

54. Upon learning of Keller's continuing violation of DWM's copyrights, DWM contacted NaughtyBids and notified them of the ongoing violations by Keller.

55. Naughtybids in turn contacted Keller to relay the allegations of copyright infringement made by DWM, and temporarily suspended activity on Keller's ongoing auctions.

56. In response, Keller asserted that all items he had been auctioning on NaughtyBids were original videos and DVDs.

57. An Email exchange between NaughtyBids, Mr. Gary Gorham (previous attorney for DWM) and Keller is attached as Exhibit 21. In this exchange, on page 6, Keller assures

NaughtyBids that he is "not duping Dick Wadd videos, not selling unauthorized versions of Dick Wadd videos, not selling multiple copies of Dick Wadd videos."

59. On information and belief, and based thereon, DWM alleges that contrary to his claims, Keller is indeed duping DWM videos, selling unauthorized versions of DWM videos, and selling multiple copies of DWM videos.

60. In obtaining proof of Keller's wanton infringement of DWM's copyrighted works, several counterfeit DWM video products were obtained from Keller.

61. One such order of counterfeit DWM product was obtained from Keller, as evidenced by his Return Address, on May 18, 2006, as shown by the postmark on the envelope shown in Exhibit 22.

62. Enclosed in the envelope were two DVDs which were ordered by DWM, through its associate Mr. Todd Bianco, CPA, on auctions listed by Keller as "original" DWM product.

63. As shown on page 2 and 3 of Exhibit 22, these so-called "original" DWM products were instead bootleg DVD-R copies of DWM video products with the titles "Wet Raw & Deep" and Pigs at the Troff" scrawled on them in magic marker.

64. On information and belief, and based thereon, DWM alleges that Keller has posted many hundreds of auctions on NaughtyBids for unauthorized copies of DWM video products.

65. Mr. Bianco had received prior solicitation from Keller to sell additional unauthorized versions of DWM videos via Email. This 43 page Email is contained in Exhibit 23.

66. Keller's 43 page list that Keller offered to Mr. Bianco contained over 2,480 different video titles from various adult media companies. Twenty one of the 2,480 titles were from DWM, and the Email has been marked with a dot next to the DWM titles listed.

67. It is remarkable that Keller has a listing of over 2,480 video titles he offers for sale.

68. It is particularly remarkable that Keller claims that all such video titles are "original".

69. In Keller's Email solicitations, Keller even offered to put several of DWM's video products available only on VHS onto DVD for Mr. Bianco. Specifically, in the Email attached as Exhibit 24, Keller offers to put DWM's title "Wet Raw & Deep" onto DVDR, but "[they] would need to keep things between us".

70. Keller also offered to put DWM's titled "Pigs at the Troff" onto DVDR for a mere $15, but Keller again cautions Mr. Bianco "I just want to make sure we keep it between us." A copy of this Email is attached as Exhibit 25.

---

COMPLAINT FOR WILLFUL COPYRIGHT INFRINGEMENT; STATUTORY UNFAIR COMPETITION; COMMON LAW UNFAIR COMPETITION; INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE; NEGLIGENT INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE; BREACH OF CONTRACT; ACCOUNTING; PERMANENT INJUNCTION, and DEMAND FOR JURY TRIAL

- 13

71.  On information and belief, and based thereon, DWM alleges that special knowledge and equipment is required to transfer video from VHS videotape to DVD media.

72.  It is particularly difficult to transfer a video from a VHS videotape to a DVD media as it requires sophisticated electronic equipment.  Typically, such a transfer requires a state-of-the-art computer system, advanced video signal capture hardware, appropriate software, and the expertise to successfully accomplish the transfer.  An example of the electronic equipment required for transferring a VHS video to a DVD is listed in the article attached as Exhibit 26.

73.  On information and belief, and based thereon, DWM alleges that Telerx is assisting Keller in his infringing activities of DWM's copyrighted works by providing Keller with the use of sophisticated computer equipment and software which is used to create the unauthorized duplicates of the DWM titles.

74.  On information and belief, and based thereon, DWM alleges that Telerx is assisting Keller in his infringing activities of DWM copyrighted works by providing Keller with facilities which are used to create the unauthorized duplicates of the DWM titles.

75.  On information and belief, and based thereon, DWM alleges that Lisa Keller assists Keller with his infringing

activities of DWM copyrighted works, and is thus likewise engaging in copyright infringement of DWM's titles.

76. On information and belief, and based thereon, DWM alleges that Lisa assists Keller with his infringing activities of DWM copyrighted works by providing Keller with facilities which are used to create the unauthorized duplicates of DWM titles, and is thus likewise engaging in copyright infringement of DWM's titles.

77. On information and belief, and based thereon, DWM alleges that Lisa is providing financial assistance to Keller to facilitate his infringing activities of DWM copyrighted works, receives a direct financial benefit, and is thus likewise engaging copyright infringement of DWM's titles.

Current Attempts to Resolve Infringement

78. In 2002, Keller had been caught copying DWM video products, and entered into a Settlement Agreement in 2003 in which he paid DWM $12,575 for his infringing activities and agreed not to engage in similar future infringing conduct.

79. DWM has once again confronted Keller regarding his unauthorized duplication and sale of DWM video products.

80. Keller was well aware of the copyrights in DWM video products, and had recently agreed to a settlement of these

1    claims.  A letter from Keller to DWM's prior attorney is

2    attached as Exhibit 27.

3  81. In Keller's offer for resolution, he significantly under-

4    represented the number of infringing copies of DWM video

5    products he had sold, indicating only a few sales.

6

7  82. Despite DWM's multiple requests for a full accounting of

8    sales of DWM titles, Keller refuses to provide such.

9  83. Based on Keller's admonition of secrecy to Mr. Bianco as

10   shown in Exbibits 24 and 25, it is clear that Keller knows

11   his actions are not within the confines of the law, and has

12   taken steps to keep secret his infringement activities.

13

14 84. Through his repeated acts of copyright infringement, Keller

15   has demonstrated his acts are indeed willful violations of

16   the copyright laws of the United States, entitling DWM to

17   all remedies available under the law.

18

19

20            **DEFENDANTS Continuing Acts of Infringement**

21 85. DWM is informed and believes, and based thereon alleges,

22   that Keller, though aware of the dispute and pendency of

23   this action, continues to distribute video products which

24   infringe the copyrights in the DWM media products.

25

26 86. DWM is informed and believes, and based thereon alleges,

27   that Defendants, unless enjoined from continuing their

28

---

COMPLAINT FOR WILLFUL COPYRIGHT INFRINGEMENT; STATUTORY UNFAIR COMPETITION; COMMON LAW UNFAIR
COMPETITION; INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE; NEGLIGENT
INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE; BREACH OF CONTRACT; ACCOUNTING; PERMANENT
INJUNCTION, and DEMAND FOR JURY TRIAL

1    aggressive infringement activities, will continue such

2    activities to the detriment of DWM's copyrights.

3    87.  Because of the existence of DEFENDANTS' infringing video

4

5    products, the market for DWM's original video products is

6    being destroyed, resulting in a severe economic hardship to

7    DWM.

8    88.  DEFENDANTS, and each of them, knew that DWM would be

9

10   financially damaged by the unauthorized duplication and

11   sale of the infringing video products, and with malicious

12   intent, have continuously and systematically infringed

13   DWM's copyrights, with the express purpose of

14   commercializing upon DWM's copyrights, and depriving DWM of

15   the benefits of its business ventures.

16

17

18                     **FIRST CLAIM FOR RELIEF**

19                     **COPYRIGHT INFRINGEMENT**

20

21   89.  DWM realleges each and every allegation set forth in

22

23   paragraphs 1 through 88, inclusive, and incorporates them

24   herein by this reference.

25   90.  The aforementioned acts of DEFENDANTS constitute numerous

26   acts of statutory and common Copyright Infringement in

27   violation of Title 17, United States Code, Section 1 et

28   seq., including willful copyright infringement.

91.  DWM is entitled to recover from DEFENDANTS the damages
     including attorney's fees that DWM will sustain and has
     sustained, statutory damages, any gains, profits, and
     advantages obtained by DEFENDANTS as a result of acts of
     infringement mentioned above.  At present the amount of
     such damages, gains, profits, and advantages cannot be
     fully ascertained by DWM.

### SECOND CLAIM FOR RELIEF

### STATUTORY UNFAIR COMPETITION

92.  DWM realleges each and every allegation set forth in
     paragraphs 1 through 91, inclusive, and incorporates them
     herein by this reference.

93.  This account arises under the fair competition laws of the
     United States of America, Title 15, United States Code
     *$1125(a)*, commonly known as *$42(a) of the Lanham Act.*

94.  By reason of DEFENDANTS' ongoing infringements, DWM has
     sustained and continues to sustain substantial injury, loss
     and damage to its ownership rights in its Copyrights and
     business.

95.  These wrongful acts have proximately caused and will
     continue to cause DWM substantial injury, including loss of
     customers, dilution of good will, confusion of existing

1   potential customers, injury to reputation, and diminution

2   of value to DWM works.

3   96.   DWM is entitled to recover from DEFENDANTS the damages

4   

5   sustained as a result of DEFENDANTS' acts of unfair

6   competition.  DWM is presently unable to ascertain the full

7   extent of the monetary damages that it has suffered by

8   reason of DEFENDANTS' acts of Federal Statutory Unfair

9   Competition.

10  97.   DWM is further entitled to recover from DEFENDANTS the

11  

12  gains, profits, and advantages that they have obtained as a

13  result of their acts of unfair competition.  DWM is

14  presently unable to ascertain the full extent of the

15  monetary damages that it has suffered by reason of

16  DEFENDANTS' acts of Federal Statutory Unfair Competition.

17  

18  

19                    **THIRD CLAIM FOR RELIEF**

20                **COMMON LAW UNFAIR COMPETITION**

21  

22  98.   DWM realleges each and every allegation set forth in

23  

24  paragraphs 1 through 97, inclusive, and incorporates them

25  herein by this reference.

26  99.   This account arises under the unfair competition laws of

27  the State of California. DEFENDANTS' conduct alleged above

28  constitutes unlawful, unfair, or fraudulent business

practices, violation of California Business and Professions Code §§ 17200 et. seq. Jurisdiction is conferred upon the Court by 28 U.S.C. § 1338(b), and the Doctrine of Pendant Jurisdiction.

100. By reason of DEFENDANTS' ongoing and threatened future infringements, DWM has sustained and continues to sustain substantial injury, loss and damage to its ownership rights in its Copyrights and business.

101. These wrongful acts have proximately caused and will continue to cause DWM substantial injury, including loss of customers, dilution of good will, confusion of existing potential customers, injury to reputation, and diminution of value to DWM works.

102. DWM is entitled to recover from DEFENDANTS the damages sustained as a result of DEFENDANTS' acts of unfair competition. DWM is presently unable to ascertain the full extent of the monetary damages that they have suffered by reason of DEFENDANTS' acts of Unfair Competition.

103. DWM is further entitled to recover from DEFENDANTS the gains, profits, and advantage that they have obtained as a result of their acts of unfair competition. DWM is presently unable to ascertain the full extent of the monetary damages that it has suffered by reason of DEFENDANTS' acts of Unfair Competition.

# FOURTH CLAIM FOR RELIEF

## INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

104. DWM realleges each and every allegation set forth in paragraphs 1 through 103, inclusive, and incorporates them herein by this reference.

105. Jurisdiction is conferred upon the account by 28 U.S.C. §1338(b) and the Doctrine of Pendant Jurisdiction.

106. DWM is and has been engaged in on-going business which involves acquiring the trust and confidence of customers and prospective customers and negotiating and performing contracts, developing relationships leading to the sale of DWM video products, and maintaining a valuable and substantial patronage and good will, and the resultant expectation of receiving future business out of said business relationships.

107. DEFENDANTS were aware of the substantial probability of future economic benefit to DWM as a result of such relationships.

108. DEFENDANTS, and each of them, also knew that causing to and interfering with these relationships would result in substantial damage to DWM.

109. DWM is informed and believes and based thereon alleges that on dates unknown to DWM that DEFENDANTS and each of them